IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

    *Plaintiff*,

    v.

DOUGLAS SPARROW,
    *Defendant*.

Criminal No. ELH-18-00417

(Related Civil No.:  ELH:  21-2267)

## MEMORANDUM OPINION

Petitioner Douglas Sparrow, who is now self represented, has filed a post-conviction petition under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence.  ECF 39 (the "Petition").  He contends that his attorney was ineffective with respect to his guilty plea to the offense of possession of a stolen firearm, in violation of 18 U.S.C. § 922(j), for which he received a sentence of 100 months of imprisonment.

The government opposes the Petition.  ECF 45.  Defendant has replied.  ECF 46.

No hearing is necessary to resolve the Petition.  For the reasons that follow, I shall deny the Petition.

### I.      Factual Background

Defendant was indicted on August 8, 2018.  ECF 1.  The Indictment charged defendant with possession by a prohibited person of a semi-automatic pistol and ammunition on March 1, 2018, in violation of 18 U.S.C. § 922(g)(1).  *Id.*  A Superseding Information was filed on January 9, 2019.  ECF 19.  It charged the defendant with the knowing possession of a stolen firearm, under 18 U.S.C. § 922(j).  As discussed, *infra*, the distinction in the offenses was critical to the defendant.

Pursuant to a Plea Agreement (ECF 21), defendant entered a plea of guilty to the Superseding Information on January 10, 2019.  ECF 25.  The plea was tendered under Rule 11

(c)(1)(C), by which the parties agreed to a sentence ranging from 96 months to 120 months of imprisonment.  ECF 21, ¶ 9.  The top end of the C plea range corresponded with the statutory maximum.

Defendant signed the Plea Agreement.  *Id.* at 9.  He represented that he had carefully reviewed the Plea Agreement and did not wish to change any part of it.  *Id.*  In addition, the Plea Agreement contained a Stipulation of Facts.  *Id.* at 10.  Defendant also signed the Stipulation.  *Id.*

According to the Stipulation, the Baltimore Police Department executed a search warrant at defendant's home on March 1, 2018.  After the defendant waived his *Miranda* rights, he told the police that he had a firearm in his couch.  *Id.*  The officers searched the couch, found a semi-automatic pistol, and arrested Sparrow.  *Id.*  At the time of the arrest, the pistol had not been reported lost or stolen.  *See* ECF 39-4 at 6.  In the Stipulation, however, the parties agreed that the firearm was stolen, and that defendant knew or had reason to believe that it was stolen.  ECF 21 at 10.  The police also found a quantity of marijuana in the house that belonged to Sparrow, and the quantity was consistent with intent to distribute it.  *Id.*

In the Plea Agreement, the parties contemplated a base offense level of 24 under § 2K2.1(a)(2) of the Sentencing Guidelines ("Guidelines" or "U.S.S.G.").  *Id.* 6(a).  A two-level increase applied because the weapon was stolen.  *See* § 2K2.1(b)(4)(a).  *Id.*¶ 6(b).  And, a four-level increase applied because the defendant possessed the firearm in connection with drug trafficking.  *See* § 2K2.1(b)(6)(B).  *Id.* ¶ 6(c).  After three deductions for acceptance of responsibility under § 3E1.1 (*id.* ¶ 6(d)), the parties anticipated a final offense level of 27.  *Id.* There was no agreement as to defendant's criminal history.  *Id.*¶ 7.

The Presentence Report ("PSR," ECF 26) reflects that defendant had a criminal history

score of 12 points. *Id.* ¶ 36.[1]   That equated to a criminal history category of V. *Id.* ¶ 37.

As discussed, *infra*, defendant had at least three prior convictions that likely would have qualified as "violent felonies" or "serious drug offenses" under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). *See* ECF 26, ¶¶ 31, 33, 34.  Therefore, had Sparrow been convicted of the offense under 18 U.S.C. § 922(g), as charged in the Indictment, and if the ACCA applied, defendant would have been subjected to a 15-year mandatory minimum sentence, with a maximum potential term of life imprisonment. *See* 18 U.S.C. § 924(e).

However, Sparrow's counsel negotiated a plea agreement that avoided the ACCA and its enhanced penalties.  Specifically, pursuant to the Plea Agreement, the Superseding Information charged defendant with possession of a stolen firearm, in violation of 18 U.S.C. § 922(j), rather than the § 922(g) offense charged in the Indictment.  The government explains, ECF 45 at 2: "Stolen firearm offenses are not subject to the ACCA.  They have no mandatory minimum (compared to a 15-year mandatory minimum) and are punishable by up to 10 years' imprisonment (compared to life imprisonment). *See* 18 U.S.C. § 924(a)(2)."

At the Rule 11 proceeding held on January 10, 2019 (ECF 25), the defendant took an oath to tell the truth. *See* ECF 43 (Tr. of 1/10/19) at 2, 3.  He was 35 years of age at the time. *Id.* at 2.  The Court explained the elements of a § 922(j) offense to Sparrow, including that the firearm must be stolen. *Id.* at 9.  When the Court asked defendant if he understood the essential elements of the offense, *id.* at 10, defendant responded, "Yes." *Id.*  In the government's summary of facts, the government stated that the firearm was stolen and that defendant knew or had reasonable cause to believe that the firearm was stolen. *Id.* at 33.  Defendant agreed with the accuracy of the facts. *Id.*

---

[1] Defendant had several prior offenses that did not score points. *See* ECF 26, ¶¶ 26, 27, 29, 30, 32, 35.

at 34.

In particular, the Court inquired, *id.*:

COURT:      Mr. Sparrow, is that an accurate summary of the facts in the case?

DEFENDANT:      Yes.

In addition, the following transpired, *id.*:

COURT:      Did you, in fact, commit the crime as summarized by the Government?

DEFENDANT:      Yes.

*     *     *

COURT:      Are you pleading guilty because you are guilty as charged?

DEFENDANT:      Yes.

Sentencing was held on April 19, 2019. ECF 29. At sentencing, Sparrow's counsel seemed to suggest that, by way of the Plea Agreement, defendant avoided harsher penalties. He said, ECF 41 (Sentencing Tr. of 4/19/19) at 14-15:

> And yes, if we go to trial on this thing in U.S. District Court, [Mr. Sparrow] could face a substantially heavier sentence. I don't know how much heavier, but the bidding would start at a higher number than what the range is here, even the statutory maximum.

*     *     *

> And he asked me, he's asked me even during the plea negotiation process, that he appreciated, wanted [the government] to know that he appreciated whatever could be done. And something was, in fact, done, I believe for him.

With a final offense level of 27 and a criminal history category of V, the Guidelines for the § 922(j) offense called for a sentence ranging from 120 to 150 months of imprisonment. ECF 26, ¶ 87. However, the Court may not impose a sentence that exceeds the statutory maximum, which in this case was 120 months. So, the Guidelines range was adjusted to 120 months, under U.S.S.G.

4

§ 5G1.1(c)(1).  *See* ECF 26, ¶ 87.  Although the C plea range called for a sentence of imprisonment ranging between 96 and 120 months, the Court sentenced defendant to 100 months of imprisonment.  Sparrow did not appeal.

In his § 2255 Petition, Sparrow argues that his counsel was ineffective.  He claims, *inter alia*, that his lawyer's performance was deficient because he advised defendant to plead guilty to the § 922(j) offense, even though the firearm had not been reported stolen at the time of defendant's arrest.

Additional facts are included, *infra*.

## II.  Legal Standards

### A.  Section 2255

Section 2255(a) of Title 28 of the United States Code provides relief to a prisoner in federal custody only on specific grounds: "(1) 'that the sentence was imposed in violation of the Constitution or laws of the United States,' (2) 'that the court was without jurisdiction to impose such a sentence,' (3) 'that the sentence was in excess of the maximum authorized by law,' and (4) that the sentence 'is otherwise subject to collateral attack.'" *See Hill v. United States*, 368 U.S. 424, 426-27 (1962) (citing 28 U.S.C. § 2255); *see United States v. Hodge*, 902 F.3d 420, 426 (4th Cir. 2018); *United States v. Newbold*, 791 F.3d 455, 459 (4th Cir. 2015); *United States v. Pettiford*, 612 F.3d 270, 277 (4th Cir. 2010).

Under § 2255, the Petitioner must establish (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law so fundamental as to render the entire proceeding invalid. *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003). And, "an error of law does not provide a basis for collateral attack unless the claimed error

constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill*, 368 U.S. at 428).

The scope of collateral attack under § 2255 is narrower than on appeal, and a "'collateral challenge may not do service for an appeal.'" *Foster v. Chatman*, 578 U.S. 488, 519 (2016) (Alito, J., concurring) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)). A failure to raise a claim on direct appeal constitutes a procedural default that bars presentation of the claim in a § 2255 motion, unless the petitioner can demonstrate "cause and actual prejudice resulting from the errors of which he complains," or "actual innocence." *Pettiford*, 612 F.3d at 280 (citing *United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999)); *see Bousley v. United States*, 523 U.S. 614, 621 (1998) ("Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal.") (internal quotations and citations omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *see also Dretke v. Haley*, 541 U.S. 386, 393 (2004); *Reed v. Farley*, 512 U.S. 339, 354 (1994) (stating that "the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice resulting from the alleged violation.'"); *Finch v. McKoy*, 914 F.3d 292, 298 (4th Cir. 2019) (discussing requirements for a claim of actual innocence); *United States v. Linder*, 552 F.3d 391, 397 (4th Cir. 2009).

However, failure to raise on direct appeal a claim of ineffective assistance of counsel is not regarded as procedurally defaulted. *Massaro v. United States*, 538 U.S. 500, 509 (2003). Thus, such a claim is not barred under § 2255, even if not raised on appeal.  Indeed, such claims ordinarily are not litigated on direct appeal. Generally, such claims are litigated in a § 2255 action to allow for development of the record. *Massaro*, 538 U.S. at 504-06 (2003); *United States v. Ladson*, 793 F. App'x 202 (4th Cir. Feb. 12, 2020) (per curiam).  Thus, claims of ineffective assistance are cognizable on direct appeal "only where the record conclusively establishes ineffective

assistance." *United States v. Baptiste*, 596 F.3d 214, 216 n.1 (4th Cir. 2010); *see also Ladson*, 793 F. App'x at 203.

In reviewing the Petition, the Court is mindful that a self-represented litigant is generally "held to a 'less stringent standard' than is a lawyer, and the Court must liberally construe his claims, no matter how 'inartfully' pled." *Morrison v. United States*, RDB-12-3607, 2014 WL 979201, at *2 (D. Md. Mar. 12, 2014) (internal citations omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *Quintero v. Garland*, 998 F.3d 612, 634 (4th Cir. 2021) (same); *Bala v. Commonwealth of Virginia Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013) (per curiam) (same).

Pursuant to 28 U.S.C. § 2255(b), the court must hold an evidentiary hearing "[u]nless the motion and the files and records conclusively show that the prisoner is entitled to no relief . . . ." *United States v. Mayhew*, 995 F.3d 171, 176 (4th Cir. 2021); *see United States v. White*, 366 F.3d 291, 302 (4th Cir. 2004). Ordinarily, a district court has discretion as to whether to hold a hearing, but "a hearing is required when a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the record, or when a credibility determination is necessary to resolve the claim . . . ." *Mayhew*, 995 F.3d at 176-77. If the district court "denies relief without an evidentiary hearing," the appellate court will "construe the facts in the movant's favor." *United States v. Akande*, 956 F.3d 257, 261 (4th Cir. 2020); *see also United States v. Turner*, 841 F. App'x 557, 559 (4th Cir. 2021) (same)

In my view, no hearing is necessary.  As discussed below, no colorable claims have been presented.

### B.  Ineffective Assistance of Counsel

The Sixth Amendment to the Constitution guarantees a criminal defendant the right to the effective assistance of competent counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Buck v. Davis*, —— U.S. ——, 137 S.Ct. 759, 775 (2017). Ineffective assistance of counsel is a well recognized basis for relief under collateral attack. *See generally Missouri v. Frye*, 566 U.S. 133 (2012); *Lafler v. Cooper*, 566 U.S. 156 (2012); *Padilla v. Kentucky*, 559 U.S. 356 (2010).

To mount a successful challenge under 28 U.S.C. § 2255 based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in *Strickland*, 466 U.S. at 687–88; *see Williams v. Taylor*, 529 U.S. 362, 390 (2000); *United States v. Palacios*, 982 F.3d 920, 923 (4th Cir. 2020); *Akande*, 956 F.3d at 260; *United States v. Winbush*, 922 F.3d 227, 229 (4th Cir. 2019); *United States v. Hall*, 771 F. App'x 226, 227 (4th Cir. 2019) (per curiam); *United States v. Carthorne*, 878 F.3d 458, 465 (4th Cir. 2017); *United States v. Powell*, 850 F.3d 145, 149 (4th Cir. 2017). First, the petitioner must show that counsel's performance was deficient. Second, the petitioner must show that he was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687; *see Buck*, 137 S.Ct. at 775; *Chaidez v. United States*, 568 U.S. 342, 348 (2013); *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Hill*, 474 U.S. at 57; *Winbush*, 922 F.3d at 229; *Powell*, 850 F.3d at 149*; United States v. Rangel*, 781 F.3d 736, 742 (4th Cir. 2015); *United States v. Dyess*, 730 F.3d 354, 361 (4th Cir. 2013); *Richardson v. Branker*, 668 F.3d 128, 139 (4th Cir. 2012); *United States v. Higgs*, 663 F.3d 726, 735 (4th Cir. 2011); *see also United States v. Richardson*, 820 F. App'x 225, 226 (4th Cir. 2020) (per curiam); *United States v. Baker*, 719 F.3d 313, 318 (4th Cir. 2013). The petitioner must prove his claim by a preponderance of the evidence. *Pettiford*, 612 F.3d at 277; *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958); *Mayhew*, 995 F.3d at 176.

The first *Strickland* prong, known as the "performance prong," relates to professional competence. The petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness," as measured by "prevailing professional norms." *Strickland*, 466 U.S. at 688; *see Harrington v. Richter*, 562 U.S. 86, 104 (2011); *Richardson*, 820 F. App'x at 225; *Powell*, 850 F.3d at 149; *Hall*, 771 F. App'x at 227. The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Richter*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690).

The Supreme Court has recognized that the "first prong sets a high bar." *Buck*, 137 S.Ct. at 775; *see also Powell*, 850 F.3d at 149. In *Padilla*, the Court stated, 559 U.S. at 371: "Surmounting Strickland's high bar is never an easy task." Notably, a "lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Buck*, 137 S.Ct. at 775 (citation omitted). Consequently, the performance prong is "'difficult'" to establish. *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008) (quoting *James v. Harrison*, 389 F.3d 450, 457 (4th Cir. 2004)).

To satisfy the high bar, the burden is on the petitioner to establish "'that counsel made errors so serious that his "counsel" was not functioning as the "counsel" guaranteed by the Sixth Amendment.'" *Richter*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 687).  Notably, "the *Strickland* standard must be applied with scrupulous care," because "the standard of judging counsel's representation is a most deferential one." *Richter*, 562 U.S. at 105; *see United States v. Morris*, 917 F.3d 818, 823 (4th Cir. 2019).  Indeed, "[k]eenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional

assistance.'" *Lawrence*, 517 F.3d at 708 (quoting *Strickland*, 446 U.S. at 689); *see Cullen v. Pinholster*, 563 U.S. 170, 189 (2011); *Richter*, 562 U.S. at 104; *Richardson*, 820 F. App'x at 225-26; *Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015).

Under the second *Strickland* prong, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Strickland*, 466 U.S. at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Buck*, 137 S.Ct. at 776; *Lafler*, 566 U.S. at 163; *Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993). "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 687. However, a petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

A court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). This is because failure to satisfy either prong is fatal to a petitioner's claim. As a result, "there is no reason for a court...to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

### C.  Ineffective Assistance as to Plea Bargaining

A guilty plea is a "waiver of [a defendant's] right to trial before a jury or a judge." *Brady v. United States*, 397 U.S. 742, 748 (1970). It is "a grave and solemn act . . . ." *Id.* For a guilty plea to be valid, it must be voluntary. *Id.* And, "[w]aivers of constitutional rights not only must

be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Id.*; *see Bradshall v. Stumpf*, 545 U.S. 175, 183 (2005) (same). Thus, the plea must reflect an "intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).

A plea cannot be "voluntary in the sense that it constituted an intelligent admission . . . unless respondent received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Henderson v. Morgan*, 426 U.S. 637, 645 (1976) (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). However, the Supreme Court clarified in *Marshall v. Lonberger*, 459 U.S. 422, 436 (1983), that "it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." *Marshall*, 459 U.S. at 436 (1983) (quoting *Henderson*, 426 U.S. at 647) (internal quotations omitted).

Of relevance here, the Sixth Amendment right to counsel extends to the plea-bargaining process. *McMann v. Richardson*, 397 U.S. 749, 771 (1970); *United States v. Murillo*, 927 F.3d 808, 815 (4th Cir. 2019); *Hall*, 771 F. App'x at 227; *see also Frye*, 566 U.S. at 140-44; *Lafler*, 566 U.S. at 162. Notably, a plea agreement "is an essential aspect of the administration of criminal justice . . . ." *United States v. Lewis*, 633 F.3d 262, 269 (4th Cir. 2011).

In federal court, the plea process is governed by Rule 11 of the Federal Rules of Criminal Procedure. In *Hill v. Lockhart*, *supra*, 474 U.S. 52, the Supreme Court explained that, "where ... a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness [and intelligence] of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* at 56 (citation omitted). And, in assessing whether counsel's performance was deficient, courts adopt a "strong

presumption" that counsel's actions fell within the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

The prejudice prong of the *Strickland* test is slightly modified in the context of plea bargaining. *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988). In *Hooper*, the Fourth Circuit explained, *id.* (quoting *Hill*, 474 U.S. at 59): "When a defendant challenges a conviction entered after a guilty plea, [the] 'prejudice' prong of the [*Strickland*] test is slightly modified. Such a defendant 'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Accord Burket v. Angelone*, 208 F.3d 172, 189 (4th Cir. 2000); *see also Richardson*, 820 F. App'x at 226. And, the defendant has the burden to establish a reasonable probability that, but for counsel's deficient performance, he would not have pled guilty. *Murillo*, 927 F.3d at 817.

*Hooper*, 845 F.2d 471, is illustrative. There, the defendant, who had a history of mental illness, pled guilty in a Virginia court to second-degree murder. *Id.* at 472. However, his lawyers failed to obtain a psychiatric evaluation before the defendant's entry of the guilty plea. *Id.* Hooper subsequently filed a habeas corpus petition, which the district court denied. *Id*. On appeal, the Fourth Circuit noted that the "burden is on Hooper to establish a reasonable probability that if his lawyers had obtained a psychiatric report, he would have rejected the plea agreement" and gone to trial. *Id.* at 475.

The Fourth Circuit examined a psychiatric report obtained after the guilty plea against the background of the circumstances Hooper faced at the time he decided to plead guilty. The Court was not persuaded that the report provided evidence sufficient to establish a reasonable probability that Hooper would have declined the plea agreement and gone to trial, even if his counsel had obtained a psychiatric report at the time. *Id.* at 475-76. Although the Court concluded that the

failure to obtain a psychiatric report fell below the objective standard of reasonableness established by *Strickland*, it was satisfied that Hooper was not prejudiced because there was no reasonable probability that the deficiency changed the outcome of the proceeding.

Of relevance here, when a criminal defendant claims ineffective assistance of counsel after pleading guilty, he is "bound," absent clear and convincing evidence to the contrary, "by the representations he made under oath during a plea colloquy." *Fields v. Attorney Gen. of Md.,* 956 F.2d 1290, 1299 (4th Cir. 1992); *see Blackledge v. Allison*, 431 U.S. 63, 74-75 (1977); *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005). Indeed, "a defendant's solemn declarations in open court affirming a [plea] agreement ... 'carry a strong presumption of verity.'" *Lemaster*, 403 F.3d at 221 (quoting *Blackledge*, 431 U.S. at 74). Therefore, conclusory allegations in a § 2255 petition that are contrary to testimony provided at a Rule 11 hearing are "palpably incredible and patently frivolous or false." *Lemaster*, 403 F.3d at 222. As the Fourth Circuit has explained, "courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." *Id. See also Blackledge,* 431 U.S. at 74; *White*, 366 F.3d at 295-96; *United States v. Bowman*, 348 F.3d 408, 417 (4th Cir. 2003).

Moreover, the Fourth Circuit has acknowledged that, on post-conviction, a defendant who has pled guilty "has an incentive to claim, in retrospect, that the result of the plea process would have been different regardless of whether that claim is, in fact, true." *Murillo*, 927 F.3d at 815; *see Lee v. United States*, —— U.S. ——, 137 S.Ct. 1958, 1967 (2017) ("Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have [pled] but for his attorney's deficiencies."). Therefore, "to prevent criminal defendants with bargainer's remorse from simply claiming they would not have taken a deal but for a bit of bad advice," the defendant must "provide evidence of [his] sincerity." *Murillo*, 927 F.3d at 816. In particular, the defendant

"must point to evidence that demonstrates a reasonable probability that, with an accurate understanding of the implications of pleading guilty, he would have rejected the deal." *Id.*

In the context of a plea bargain, "the defendant is the master of the outcome." *Murillo*, 927 F.3d at 815. Therefore, "[t]he prejudice analysis in the context of the plea-bargaining process requires a fact-based evaluation of the weight of the evidence." *Id.* To this end, "plea agreement language and sworn statements must be considered in their context[.]" *Id.* at 817; *see Lemaster*, 403 F.3d at 221-22.

## III.    Discussion

Sparrow argues that his trial counsel was ineffective for advising him to plead guilty to possession of a stolen firearm. He asserts that he was "adamant" in telling his lawyer that he only claimed ownership of the gun because the officers had handcuffed his wife and threatened to "lock her up." ECF 46 at 2. Further, defendant insists that he made clear that he wanted to "'fight' the charges . . . .'" *id.*, because the police lacked probable cause to be at his home. *Id.* at 3. Moreover, he claims he did not know he "had lost his Second Amendment Right [to] bear arms." *Id.*

The government asserts, ECF 45 at 5:

> Sparrow cannot show deficient performance because the advice placed him in a much better position, and it was consistent with the law and the facts. Sparrow very likely would have been convicted of the § 922(g) offense. No one disputes that Sparrow possessed the firearm, that it met the definition of a firearm, or that it traveled in interstate commerce. Plus, given that Sparrow had previously received multiple sentences of 5 years' imprisonment or longer, the government very likely would have proven that Sparrow was a felon and knew that he was a felon when he possessed the firearm. *See* PSR ¶¶ 28, 31, 33, 34. Those same convictions likely would have placed Sparrow within the ACCA's ambit, subjecting him to a mandatory 15-year mandatory minimum.

In addition, the government argues that "there was a factual predicate for the conviction, as Sparrow agreed—in the plea agreement and under oath during the guilty plea hearing—that the firearm was stolen." *Id.*

As noted, "courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." *Lemaster*, 403 F.3d at 221. "[I]n the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false." *Id.* (internal citations and quotation marks omitted).  This is such a case.

It is clear that defense counsel achieved a very favorable result for the defendant. According to the PSR (ECF 26), the defendant was convicted in the Circuit Court for Baltimore City on September 15, 2003, of possession with intent to distribute CDS. *Id.* ¶ 28.  The offense occurred on August 15, 2002, and the substance appears to have been marijuana. *Id.* Defendant was sentenced to five years of imprisonment. *Id.*

Also on September 15, 2003, defendant was convicted of possession with intent to distribute CDS and distribution, in connection with an offense that occurred on January 10, 2003. The substance was cocaine.  Defendant received concurrent five year sentences. *Id.* ¶ 31.  And, on September 15, 2003, defendant was convicted of yet another CDS offense—possession with intent to distribute. *Id.* ¶ 33.  That offense occurred on March 29, 2003, and involved cocaine, for which defendant received a five-year sentence. *Id.*

As reflected in ECF 26, multiple CDS offenses were all resolved on the same date in September 2003.  But, they were separate and distinct offenses that occurred on three different dates.

Then, on June 18, 2009, defendant was convicted of armed robbery and use of a handgun in the commission of a crime. *Id.* ¶ 34.  He received a sentence of seven years.

As noted, the defendant had 12 criminal history points. *Id.* ¶ 36. This yielded a criminal history category of V. *Id.* ¶ 37.

As mentioned, Sparrow was initially charged under 18 U.S.C. § 922(g)(1). That statute makes it illegal for a felon to possess a firearm. Section 924(e) of 18 U.S.C. states, in part: "In the case of a person who violates § 922(g) of this title and has three previous convictions by any court referred to in § 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be . . . imprisoned not less than fifteen years. . . ."

Section 924(e)(2)(A) defines the term "Serious Drug Offense." As defendant's prior offenses are all under Maryland law, § 924(e)(2)(A)(ii) is relevant. It defines a serious drug offense as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law[.]"

Thus, in order to qualify as a serious drug offense, the defendant's prior Maryland convictions must have prescribed a potential maximum term of imprisonment of at least ten years. Maryland Code (2021 Repl. Vol.), §§ 5-602 and 5-608 of the Criminal Law Article ("C.L.") are relevant.[2] C.L. § 5-602 prohibits the felony offenses of distribution of a controlled dangerous substance ("CDS") and possession with intent to distribute CDS. Section 5-608 establishes various penalties for offenses under C.L. § 5-602 through § 5-606 with respect to Schedule I or Schedule II narcotic drugs. *See* C.L. §5-101(s) (defining narcotic drug). In particular, § 5-608(a), (b) sets a

---

[2] The version of the statute cited here was not in effect when defendant was sentenced. Defendant's August 2002 offense does not appear to qualify as an ACCA predicate, but the statutory changes do not otherwise affect the analysis.

penalty of imprisonment not to exceed 20 years for the first or second offense under § 5-602 if it involves a Schedule I or Schedule II narcotic drug.[3]

The drugs that appear in Schedule I and Schedule II are set forth in C.L. § 5-402 and C.L. § 5-403, respectively. Heroin is found in Schedule I, at C.L. § 5-402(c)(11).  C.L. § 5-402(d) is titled "Hallucinogenic substances."  Marijuana is found in Schedule I at C.L. § 5-402(d)(23). Cocaine is designated as a Schedule II substance, and is found at C.L. § 5-403(b)(4); *see also Hurt v. State*, 2015 WL 5926870, at *4 (Md. Court of Special Appeals Sept. 4, 2015).[4]

The term "violent felony" is defined in 18 U.S.C. § 924(e)(2)(B)(i), (ii) as any crime punishable by imprisonment for a term exceeding one year that

> (i)     has as an element the use, attempted use, or threatened use of physical force against the person of another ["Force Clause"];
>
> (ii)    is burglary, arson, or extortion, involves use of explosives ["Enumerated Crimes Clause"], . . . .

Sparrows suggests he admitted to ownership of the gun and the drugs under duress.  But, a jury certainly could have rejected that claim.  Sparrows also argues that, at the time of his arrest, the firearm was not reported stolen.  But, this is of no legal significance.  Property need not be reported as stolen in order for it to be deemed as stolen.  *See*, *e.g.*, *United States v. Livingston*, 2017 WL 2129729, at *7 (N.D. Fla. Mar. 29, 2017).  Clearly, "the mere fact that the weapon had not yet been reported stolen at the time of the [arrest] does not mean that it had not been stolen." *United States v. Peters*, 2018 WL 3933507, at *6 (W.D. Pa. Aug. 16, 2018).

---

[3] C.L. § 5-607 provides that a person who violates §§ 5-602 through 5-606 is guilty of a felony and subject to a sentence of imprisonment of up to five years, except as provided in § 5-608 and § 5-609 (selected Schedule I and Schedule II hallucinogenic substances).

[4] In an earlier version of the statute, heroin was codified at C.L. § 5-402(c)(xv) and cocaine was codified at C.L. § 5-403(b)(3)(iv).

In sum, Sparrow cannot show deficient performance.  Based on the strength of the government's case, if the government proceeded under § 922(g), a conviction under § 922(g) was likely.  And, given defendant's record, if he had been convicted of that offense, it is likely that he would have qualified as an Armed Career Criminal.  If so, he would have faced a mandatory minimum sentence of imprisonment of at least 15 years (180 months).  Thus, the advice of defense counsel to plead to an offense that avoided that exposure readily constituted "sound trial strategy." *United States v. Higgs*, 663 F.3d 726, 739 (4th Cir. 2011) (citation omitted).

Moreover, Sparrow cannot show prejudice.  To do so, defendant must demonstrate a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have instated on going to trial." *Hill*, 474 U.S. at 59.  And, he "must convince the court that such a decision would have been rational under the circumstances." *United States v. Fugit*, 703 F.3d 248, 260 (4th Cir. 2012).  The defendant's "subjective preferences, therefore, are not dispositive; what matters is whether proceeding to trial would have bene objectively reasonable in light of all of the facts." *Id.*

For the reasons outlined above, Sparrow has not met that standard.  There is no evidence that he has proffered to support any suggestion that he would not have pleaded guilty, but for counsel's error.  Indeed, given the weight of the evidence against Sparrow, and the serious nature of Sparrow's criminal history, the government very likely would have prevailed at trial, which very likely would have exposed Sparrow to a mandatory minimum 15-year sentence.  In that light, defense counsel's negotiation of a plea agreement that avoided that outcome, and also gave Sparrow a chance to argue for a sentence below the Guidelines, was quite a favorable result for Sparrow.

### IV.    Conclusion

For the foregoing reasons, I shall deny the Petition.

### V.  Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the Court is required to issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant. A COA is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). In other words, unless a COA is issued, a petitioner may not appeal the court's decision in a § 2255 proceeding. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b).

A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Buck*, 137 S.Ct. at 773. Where the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003).

Petitioner has not made a substantial showing of the denial of his constitutional rights. Therefore, I decline to issue a COA.[5]

An Order follows, consistent with this Memorandum Opinion.


Date:  March 31, 2022                              _____/s/_____

                                                   Ellen L. Hollander
                                                   United States District Judge

---

[5] Where the district court denies a COA, this does not preclude a petitioner from seeking a COA from the appellate court.